People v Murray (2021 NY Slip Op 04108)





People v Murray


2021 NY Slip Op 04108


Decided on June 29, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 29, 2021
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. Renwick
Judith Gische Jeffrey K. Oing Manuel Mendez


Ind No. 3209/16 Appeal No. 14145 Case No. 2019-813 

[*1]The People of the State of New York, Respondent,
v
Dexter Murray, Defendant-Appellant.



Defendant appeals from a judgment of the Supreme Court, New York County (Ellen N. Biben, J.), rendered December 17, 2018, convicting defendant, after a jury trial, of criminal contempt in the second degree, resisting arrest and obstructing governmental administration in the second degree, and imposing sentence.




Caprice R. Jenerson, Office of the Appellate Defender, New York (Adam Bret Murphy and Joseph M. Nursey of counsel), for appellant.
Cyrus R. Vance, Jr., District Attorney, New York (Malancha Chanda of counsel), for respondent.




Renwick, J.P. 


Defendant appeals from a judgment of the Supreme Court, New York County (Ellen N. Biben, J.), rendered December 17, 2018, convicting defendant, after a jury trial, of criminal contempt in the second degree, resisting arrest and obstructing governmental administration in the second degree, and imposing sentence.
Caprice R. Jenerson, Office of the Appellate Defender, New York (Adam Bret Murphy and Joseph M. Nursey of counsel), for appellant.
Cyrus R. Vance, Jr., District Attorney, New York (Malancha Chanda of counsel), for respondent.
Renwick, J.P.
This case involves the prosecution of an African-American for charges stemming from an alleged assault. We must reverse defendant's conviction, because the verdict was rendered by a jury selected in violation of a basic tenet of Batson v Kentucky (476 US 79 [1986]) which is that race cannot be the reason for a peremptory challenge (id.; see also People v Payne, 88 NY2d 172, 181 [1996]; People v Watson, 169 AD3d 81 [1st Dept 2019]). The ultimate effect of such a determination is to permit a jury selection process in which the prosecutor's peremptory challenge to an African-American juror was sustained despite the fact that the prosecutor relied upon pretext when required to state a race-neutral explanation for the challenge. We cannot accept as "race-neutral" a prosecutorial explanation that was a "pretext masking a discriminatory intent" (People v Luciano, 10 NY3d 49, 503 [2008]).
After jury selection was completed, the court asked the parties whether they were satisfied with the selected jurors. Defendant, who was representing himself, said "no." Defendant told the court that there was a Batson issue because the prosecutor was "excluding all the blacks." Defendant stated that there were only five African-Americans on the panel and that all were excluded save one. Defendant stated that he was challenging the exclusion of Robinson and Israel, both of whom the prosecutor had excluded. The court asked the prosecutor to provide an explanation for both prospective jurors. We do not take issue with the explanation provided by the prosecution for excluding Israel.[FN1] We take issue with the explanation offered for the exclusion of Robinson.
At the time of the trial, prospective juror Robinson was gainfully employed with a moving company and had previously served as a juror. The prosecutor began by telling the court that Robinson was from Manhattan, and the court asked the prosecutor to provide the basis for his exclusion. The prosecutor responded that Robinson was "an older gentleman who is unmarried with no children and lives with roommates" and that the prosecutor thought that because the case was a "domestic violence situation where the victim is not testifying, that [Robinson] would be less likely to rely to [sic] the set of circumstances under which she would not be testifying."
The court then asked defendant why the court should find that the prosecutor's reasons were not the actual reasons for [*2]her challenge to Israel and Robinson. Defendant stated that there was another African-American man named Hunter who was also excluded and that neither Palikuca, who lived alone and had no children, but had "cop friends", and Guida (who was chosen as an alternate), who also lived alone, were not excluded. The court remarked that Guida was a woman, and defendant responded that she was Caucasian.
The court found that defendant had failed to meet his burden of showing that Robinson and Israel were excluded for discriminatory reasons and that the prosecutor had cited nondiscriminatory reasons for their exclusion. At the close of the day's proceedings, the prosecutor made an additional record on the Batson claim, specifically in response to defendant's statements regarding the fact that the prosecutor had excluded Black men who lived alone without children and chosen white jurors with similar living arrangements. The prosecutor stated:
"In deciding which of those men with my limited number of preemptory challenges to strike and to keep, I considered things such as how many preemptor[y] [sic] challenges the defendant had, and how far we would get in the panel . . . I also considered what jobs the men had[.] For example, juror number ten, Mr. Palikuca said he ran his own business and . . . had his own company. And so, I selected people who had higher level jobs with all other things being equal. People who indicated that they read, I valued that as well, and I thought that would help with their understanding of also the instructions on the law and following the law, and . . . deciding this case based on the evidence and nothing else."
"The Constitution forbids striking even a single prospective juror for a discriminatory purpose" (Foster v Chatman, ___ US ___, 136 S Ct 1737, 1747 [2016] [internal quotation marks omitted]), for such purposeful discrimination during jury selection, among other harms, "undermine[s] public confidence in the fairness of our system of justice" (Batson v Kentucky, 476 US at 87). In this case, the explanation for peremptorily challenging prospective juror Robinson, who like defendant, was African-American, was not sufficient to rebut the inference of purposeful racial discrimination.[FN2] On its face, the subject explanation, that an older gentleman with no children living with roommates would not able to appreciate a domestic violence situation, was not a valid trial-related concern at all. "To recognize the proffered explanation as valid and legitimate would, in our view, emasculate the constitutional protection recognized in Batson . . . and we refuse to do so" (People v Duncan, 177 AD2d 187 [4th Dept 1992], lv denied 79 NY2d 1048 [1992]). In fact, the prosecutor does not cite to a single case where this Court or any other court has found such a dubious explanation as a valid-race neutral reason.
We recognize that the prosecutor's reasons for the exercise of a peremptory challenge need not rise to the level justifying a [*3]challenge for cause (Batson v Kentucky, 476 US at 97; People v Hernandez, 75 NY2d 350, 355 [1990], affd 500 US 352 [1991]). However, the prosecutor cannot, like here, rely upon a general assertion of good faith or a frivolous, arbitrary or whimsical excuse (see e.g. People v Watson, 169 AD3d at 84 ["[R]efusing to seat any and all jurors who have been unfairly stopped and frisked or otherwise been the victim of police harassment is effectively a pretext for excluding a particular protected group as prospective jurors"]; see also Batson v Kentucky, 476 US at 97—98; People v Hernandez, 75 NY2d at 355). The protection recognized in Batson would be rendered illusory by judicial acceptance of such facially neutral reasons as the lack of sensitivity necessary to realistically look at the issues (Batson v Kentucky, 476 US at 106 [Marshall, J., concurring] ). The prosecutor's explanation must be supported by legitimate race-neutral reasons, that is, reasons "rooted in principles of jury selection, responsibility and function" (People v Hernandez, 75 NY2d at 358) and must be "related to the particular case to be tried" (Batson v Kentucky, 476 US at 98). "[P]retextual maneuvering or less verifiable manifestations of jurors' attitudes about adhering to governing instructions will not satisfy the prosecutor's burden" (People v Hernandez, 75 NY2d at 358).
Indeed, at the end of the day, the prosecution sought to correct its faulty stereotype and presumption  that an older gentleman with no children living with roommates would not be able to appreciate a domestic violence situation (see People v Watson, 169 AD3d at 84; People v Claudio, 10 AD3d 531, 534 [1st Dept 2004], lv denied 4 NY3d 829 [2005]; People v Carillo, 9 AD3d at 334 [1st Dept 2004]). The prosecution provided a second explanation for peremptorily challenging Robinson, after the jury was empaneled, instructed, and sent home for the day. However, the second explanation was offered after the court had already ruled in the prosecutor's favor finding the initial explanation valid. At no time did the trial court expressly characterize this second explanation as a valid race-neutral reason. Nor does a reasonable reading of the record support such a characterization.
In any event, the second explanation was equally pretextual. In essence, the prosecution explained that it "selected people who had higher level jobs with all other things being equal," as well as "[p]eople who indicated that they read." According to the prosecutor, those types of jurors had more capacity to follow the instructions and understand the law. The prosecutor's explanation is essentially an attempt to convince this Court with the preposterous proposition that only jurors with "higher level jobs" can effectively consider all the evidence in this case. While a juror's employment status might be an appropriate race-neutral reason for exclusion, it should be related to the facts of the case (see e.g. People v Jackson, 213 AD2d 335 [*4][1st Dept 1995, appeal dismissed 86 NY2d 860 [1995]; People v Gaines, 237 AD2d 373 [2d Dept 1997], lv denied 90 NY2d 858 [1997]; People v Williams, 199 AD2d 445 [2d Dept 1993, lv denied 83 NY2d 912 [1994]; People v Dabbs, 192 AD2d 932 [3d Dept 1992], lv denied 82 NY2d 707 [1993]; People v Duncan, 177 AD2d at 194). However, if the employment of the potential juror has no connection with the specific facts of the case then an exclusion of such a juror could constitute discrimination (People v Campos, 290 AD2d 456 [2d Dept 2002], lv denied 96 NY2d 649 [2002]; People v Smith, 266 AD2d 570 [2d Dept 1999]; People v Jackson, 213 AD2d at 336; People v Bennett, 206 AD2d 382 [2d Dept 1994], lv denied 85 NY2d 859 [1995]).
Here, the prosecutor did not relate his concerns about the prospective juror's employment to the factual circumstances of the case. Although the crime charged was serious, the facts and legal issues were not complex, and the prosecutor gave no specific basis for concluding that the prospective juror would be unable to perform a juror's function in this case. Ironically, Robinson had previously served as a juror. In addition to the absence of any reason related specifically to the case, the proffered reason was grounded in a stereotype of dubious validity, and there is no evidence that the prospective juror possessed the qualities supposedly inherent in that stereotype.
In sum, on this record, the removal of the juror was simply based on shifting explanations that were transparently pretextual. We therefore reverse the conviction and order a new trial.
Accordingly, the judgment of the Supreme Court, New York County (Ellen N. Biben, J.), rendered December 17, 2018, convicting defendant, after a jury trial, of criminal contempt in the second degree, resisting arrest and obstructing governmental administration in the second degree, and sentencing him to concurrent terms of
one year, should be reversed, on the law, and the matter remanded for a new trial.
Judgment Supreme Court, New York County (Ellen N. Biben, J.), rendered December 17, 2018, should be reversed, on the law, and the matter remanded for a new trial.
Opinion by Renwick, J.P. All concur.
Renwick, J.P., Gische Oing, Mendez, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 29, 2021



Footnotes

Footnote 1: With respect to Israel, the prosecutor told the court that the prosecutor had excluded him because Israel had said that his brother was convicted of murder in Manhattan.

Footnote 2: Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the court has ruled on the ultimate issue of purposeful discrimination, the preliminary issue of whether a defendant has made a prima facie showing becomes moot (see Hernandez v New York, 500 US 352, 359 [1991]; People v Carillo, 9 AD3d 333 [1st Dept 2004], lv denied 3 NY3d 739 [2004]).